Good morning. May it please the Court. Becky James on behalf of Yusuf Abramov, the petitioner and appellate. I would like to reserve three minutes for rebuttal. Just keep an eye on the clock. Mr. Abramov was a resident of Russia who is legally and factually innocent of the crimes with which he's charged, which all allegedly occurred in Russia, for which he is serving 150 years in an American prison. Well, the issue in front of us is not whether he's legally and factually innocent. The issue, the certified issue, is whether he received ineffective assistance of counsel and direct appeal, right? That's correct. So, I want to ask you a question about that. You address that issue on the merits and say he did. The government addresses that issue on the merits and says he did not. The trial court doesn't seem to have addressed the issue. What do we do with that? Do you want us to address the issue on the merits, even though the trial court didn't? And I assume we can. It's based on a record. Or you don't ask that we send it back to the trial court to address it in the first instance. So, I'm curious. What do you think we should be doing? I think the court should address it. It should address the issue of ineffective assistance of counsel directly on the merits. The trial court's decision didn't address it, but it was raised clearly. It was presented to the trial court. Yeah, I'm not contending you waived it or forfeited it. Right. And I guess the judge implicitly rejected it by turning down your 2255, but there's no discussion of it. And so, you make an argument about why it's ineffective assistance. The government makes an argument about why it isn't. But I don't have the benefit of the trial judge's views on this. So, I was wondering whether or not the better course of action here would just be to say to the trial judge, address it in the first instance and we'll come back and deal with it after you rule on it. Well, I think the court needs to give the district court some guidance on the issue. So, we would ask that the court address the issue on the merits and in the interest of judicial economy and bringing this case to some closure, I think it would be a more efficient course for this court to address the issue on the merits. So, if we were to address it on the merits, now I'm, I think I'm mirroring what the government argues. Your appellate counsel had two options. He might have chosen both of them. One is an option that got your client off, which is to say the argument that the statute doesn't apply to this circumstance. The other one is, well, maybe it does, but the instruction wasn't any good, which would have gotten him a new trial at which, looking at this record, he would likely have been convicted again. So, I'm trying to figure out why it wasn't a least reasonable strategic choice for counsel to say, let's go for the home run rather than the single. Well, the counsel, for one thing, has, has declared that that was strategic. Yeah, but it doesn't matter what he says. We're looking at this objectively. Well, I think it does matter what he says. The case law does say that it, it matters whether it was a strategic decision. It does, you do look at what the defense counsel  Well, if we look at what he says, if he says it was strategic, we don't, we don't excuse, we don't find it automatically to have been ineffective assistance if the defense counsel says it wasn't strategic, I didn't think about it. Well, I, I would disagree, I guess, Your Honor. I think if it's either, either it was strategic or it wasn't, the court needs to consider that, consider what the, what the trial or the appellate counsel in this case said. And even the Harrington case cited by the government says that we shouldn't engage in post hoc rationalizations of a, of a decision, counsel's It was not a strategic decision. But even if it, I mean, I would say it was an unreasonable decision, even so, because, I mean, the error in Pepe was clearly an instructional error. And to, to ignore that issue, and he certainly could have argued in the alternative too, could have argued, there's no reason he couldn't have argued both and said it should have been dismissed outright and should be vacated outright, or in the alternative, remanded for new trial. So there's no real strategic benefit to just ignoring the instructional error, which was the issue in Pepe. So, in, in Pepe, the court did hold that the pre-13, 2013 version of 2423C does not apply to foreign residents. And the court held that it was reversible error not to instruct the jury on that issue. So that, that was the exact same error that occurred here. And even the, the, the government says that the instruction that was requested at trial is not quite the same as the instruction, the instruction that you're now saying counsel on appeal should have argued, should have been given. Can you address that? Yes, I would say that the trial court, the trial counsel did adequately preserve this issue. They are trying to argue that it's plain error. The, the instruction that was requested, and this was pre-Pepe, by the way. So, I mean, he was being, you know, having quite a bit of foresight at the time. But he did request an instruction that said travel in foreign commerce means to be in a trip from the United States to a foreign country and to engage in an illicit sexual act while on this trip. The critical part of that was while on this trip. And so what Pepe decided was that, unlike in Clark, which is that basically there could be a, you know, a temporal gap between the travel. You just have to have traveled at some point in the past and then engaged in the sexual conduct. Pepe said, no, you have to still be traveling, which is why once you become a foreign resident of some place, you're no longer traveling. Do you read Pepe as saying essentially either you live in the United States and then you're on a trip or you live in a foreign country? Like those are the two, and then you're not on a trip? Yes, I think that's correct, Your Honor. And that's the way they got around Clark, because Clark had been decided before the 2013 amendment to the statute. The statute was the intervening authority which allowed them to overrule Clark. And Clark, excuse me, the 2013 amendment expressly added foreign residents to the category of individuals who could be guilty under 2423C. So that definitely says, well, before 2013, foreign residents must not have been covered, because otherwise there would have been no reason for Congress to make the change. And as you read Pepe, I mean, suppose this had happened in St. Petersburg, right? So he's a resident, and on your theory of his residency, he's a resident in Moscow, but he's doing this in St. Petersburg. I guess, is there a scenario in which one could be both domiciled outside the United States and on a trip? No. I don't think so, given Pepe's reasoning. No, because Pepe's reasoning was that to travel, if you're still traveling, once you reside in a foreign country, you're no longer traveling. That was the rationale of Pepe, and that's why they said that they had to add that amendment in 2013 to cover foreign residents, because it wasn't covered otherwise. And that's the distinction that they made with Clark, and why they reached the conclusion that they did. So it's just not really possible under Pepe's reasoning to say, well, you're a foreign resident, but you are somehow still traveling. That doesn't, it just doesn't make sense. No, I'm having, I understand your objection to the instruction. I'm not understanding what you've just said. You can be a U.S. resident and still traveling when you're in Moscow, right? If you're a U.S. resident, you can be traveling while you're in Russia, certainly. And in this case, that was one of, you make a sufficiency of the evidence argument, but let's put that aside, because I think there's enough evidence from which a reasonable finder of fact could find either way in this case, which is why you think there's prejudice. But can you be, does the statute deal with residents or domicile? That's the question that Judge Miller was posing. Well, the statute speaks in terms of residency, right? So you can be temporarily resident in a foreign country, but a resident of the United States, can you not? Theoretically, one might be able to be that, but that's not the fact here. I'm residing in Pasadena today, by any definition, but I'm not a domiciliary of Pasadena. I'm trying to figure out how this matches up with temporary residency in a place where somebody travels to Moscow with the full intention of returning to L.A. He's, in some senses, resident in Moscow when he's there, but he's still subject to the statutory prohibition if his intention is only to remain there for a short time and return to the United States, right? In theory, Your Honor, that may be in theory, but that's just not the facts we have. I think you're arguing the facts in the light most favorable to your client, which, unfortunately, when we look at sufficiency of the evidence, we don't do. There's lots of evidence that he had an L.A. residence. It may not, you may not find it convincing, but it certainly doesn't come anywhere close to actual innocence, which, by the way, is not an issue in front of us. So I'm trying to figure out, with respect to your instructional argument, what you think residency means. It simply can't mean presence in the foreign country. So I'm trying to figure out whether the statute really is talking in terms of domicile as opposed to residence. And that might make more sense in terms of what Pepe's reasoning. Pepe didn't discuss the difference between domicile versus residency. It talked in terms of residency, but it talked about permanent resettlement in an area. And so I think that's what we would be looking at. Was there an intention to permanently resettle in Russia? Your Honor, in this case, there was no resettlement in Russia. He had been living in Russia or Azerbaijan his whole life. Was there a resettlement in L.A.? He became a U.S. citizen. He bought property here. He registered his, he got driver's licenses here. He got bank accounts here. None of those are definitive, but there's certainly pieces of evidence that show an intention to resettle in L.A. A couple of points, Your Honor. We are looking at, on instructional error, we are looking at harmlessness beyond... No, I understand. I understand. See, and that's why you keep, you keep lapsing back into, there's no way he possibly could have been convicted because he was so clearly a resident of Moscow. And I'm pushing back on you on that because it seems to me your sufficiency argument is not nearly as good as your instructional argument. Well, and that's part of the ineffective assistance here, right, was that he didn't raise the instructional error. And the standard on the instructional error is much more favorable. And that's because there would have had to be, at most, harmlessness beyond a reasonable doubt. I would actually point out that in Pepe, they didn't even engage in harmlessness review at all, which suggests the question whether it's a structural error. But, you know, Nader and other cases... Well, can you point out a case to me where instructional error has been found to be structural? No, Your Honor, but Nader did not, was different in this case because... In Nader, they left out an element of the offense. They left out an element of the offense. Right, but it was an uncontested element. But your theory, I thought, was that the instructional error here was essentially leaving out an element of the offense. Yes. And so had this been raised on appeal, it would have been subject to review under the Nader standard, and the government would have had to show that there was overwhelming and uncontroverted evidence of that element, right? Right. Harmlessness beyond a reasonable doubt seems to be the prevailing standard here. I just would submit that there's perhaps an argument that it doesn't even apply. But under the harmlessness beyond a reasonable doubt standard, I just don't think you can say that this case was harmless beyond a reasonable doubt. As opposed to a sufficiency challenge, there certainly was evidence from which the jury could have found him to be a resident of Russia, including he did not buy property in the U.S., by the way, until 2011. That was after the indictment period. During the indictment period, his ownership of real property was all in Russia. He had a common-law wife there. That's where I think Judge Hurwitz's question is, I agree with you they could have found he was a resident of Russia, but is that really what they would have... Would that have been enough to preclude a conviction under the pre-2013, I guess, post-Pepe interpretation of the statute? So, on the other hand, another way to look at it would be, did they... The government just needed to show that he hadn't established a permanent residency in Russia, or that he had an intent to return to the United States, is another way to read Pepe, and that they showed that because he, in fact, did return and permanently resettle in the United States. Well, but Your Honor, during the indictment period, I mean 2009 to 2011, he had permanent residency in Russia, and he had not established a permanent residency in the U.S. during that period. He didn't have a permanent home in the U.S. He stayed with people, or he stayed at hotels. He had a permanent home. Actually, I had a couple of permanent homes in Russia where he lived. That's the way it was characterized by everyone who knew him, and he was a Russian citizen. He paid taxes in Russia. He had jobs in Russia. He had a family in Russia. So, I mean, all the evidence of permanent residency was there. Well, I guess the question now is, is the residency, right, is that really the touchstone? Because one could argue that Pepe was saying it was about intent to return, and as long as there was an intent to return, he was traveling. I mean, I'm not saying that's the only way to read Pepe, but there is one arguable way to read Pepe, and that, you know, part of the problem in Pepe was that he had, was alleging he had an intent to permanently resettle in Cambodia, and there was, you know, whereas here, the record does show continual returns to the United States and an ultimate return to the United States after he became a U.S. citizen. You know, he had family ties here. He, you know, kept returning here even though he was largely residing in Russia. He did ultimately keep returning and ultimately permanently resettled in the U.S. Yes, but I think, well, I think, Your Honor, it raises, it raises a jury question. You know, was there, was there an intent to permanently resettle is definitely a jury question, which the jury just was not asked to resolve in this case, and I think that's really the key here. I don't think we can just say, well, Pepe doesn't apply because it was a different, you know, there were some different facts. So, I see I am out of time. Would the Court indulge a couple of minutes for rebuttal? No, we will give you two minutes. Thank you, Your Honor. Mr. Gantz. Good morning, and may it please the Court. Brendan Gantz for the United States. This Court should affirm because Mr. Abramoff has not met his burden under Strickland to show either that his prior appellate counsel's performance fell below an objective standard of reasonableness or that he was prejudiced. Let me, let me, let me start right there with you, and that you may be right as a matter of this record, but the trial judge never addressed either of those issues, and so you're asking us in the first instance to find that the counsel's performance didn't fall below the standard or didn't, and certainly the trial judge never addressed prejudice, even by, I mean, unless you, we're not, we're not doing here what we do with habeas decisions, making up all the reasons that a judge might have ruled, and so we're a little bit handicapped here. Why shouldn't we ask the trial judge to actually address these issues in the first instance? Well, the first point I'd make about the District Court's decision, Your Honor, is that the District Court correctly understood Mr. Abramoff's claim to be that the jury had to be instructed that he was not to find beyond a reasonable doubt that he was not a resident of Russia, and as the court pointed out, that's simply wrong under the law. Now, the court didn't then go into the question raised about travel and whether he would have been prejudiced if counsel had asked in the 2255 motion for that instruction, but I think it's pretty clear. So are you arguing forfeiture in the 2255? We, we argue that in the 2255 motion, Mr. Abramoff's argument has been that there was instructional error because the jury should have been instructed it had to, quote, reasonable doubt that he was not a resident of Russia, and Abramoff said when the government presented evidence that he was traveling during the relevant period, Abramoff said that was irrelevant because the, the question was residency or domicile. We think the District Court correctly rejected that claim, but if, setting that aside because we think Mr. Abramoff's claim fails, even if this court overlooks the way that, the particular way that the instructional error claim was presented below, we also think that it's pretty clear, first of all, this court is, is well suited to resolve on record a claim of ineffective assistance of appellate counsel, and if Abramoff had pressed below the same claim that he presses here, I think it's pretty clear how the District Court would have resolved that based on the court's comments, and granted this was in the sufficiency of the evidence discussion, but the District Court commented that Abramoff's counsel had a difficult time presenting a credible evidence, presenting a credible case based on the trial evidence that Abramoff's real residence was Russia and California. So you think the District Court made an implicit finding of lack of prejudice? Well, I think that shows how the District Court viewed the trial evidence. Okay, so let's forget how the District Court viewed it since he didn't have to tell us, and try to figure out how we should view it. Isn't, couldn't a reasonable jury, I, I, I told your friend that I don't, I'm not impressed by the sufficiency of the evidence argument, but couldn't a reasonable jury have found that he was a resident of Russia at the time he, but committed these crimes, which I think the record overwhelmingly indicates that he committed? Why, why doesn't, why, why couldn't a reasonable jury find that he was a resident of Russia at the time? Well, the question isn't whether he was a resident of Russia, Your Honor, respectfully the question under Pepe is whether he was traveling when he committed the offenses. And Pepe uses the term resident in strange ways, but at least it seems to me what Pepe really means is that if you, if you were in a place and you had no intention of returning to someplace then, then you're not covered by the statute, but if you had an intention to return back to the United States, you're covered. Why couldn't a jury have found that he had no intention of returning to the United States? Because there was overwhelming trial evidence that established within the meaning of Section 2423C as clarified by Pepe, that Mr. Abramoff was still traveling when he committed the offenses in question. Now just to touch on Pepe briefly before I go into that, if you're about to discuss the trial evidence, that's fine. That's part of my question. In your briefing, you say it's overwhelming. The standard I believe is, would have to be overwhelming and uncontroverted. It was controverted and there was testimony from the defendant about his, you know, that he was living in Russia, that he was there for substantially more, you know, I think the record clearly shows he was in Russia for far more time than he was in the United States, you know, that he didn't have a permanent literal home in the United States. So I'm not sure why you're saying that the record was overwhelming on this issue. Well, first of all, much of the evidence that Mr. Abramoff relies on doesn't come from the trial record. It comes either from the motion to dismiss proceeding or from the 2255. But there's still a lot of, he does testify about a lot of these issues. He testifies about a number of issues, but he did not claim in his testimony that he always lived in Russia and he intended to return to Russia. That was the claim that he always intended to return to Russia was made for the first time in this 2255 proceeding after Pepe was decided and it was advantageous for him to try to claim that. At trial, he said that he was a proud American. I think there are five pieces of trial evidence that overwhelmingly establish in combination that Mr. Abramoff was still traveling within the meaning of Pepe when he committed these offenses. And just to touch on Pepe briefly before I go into that trial evidence, I think your Honor, Judge Hurwitz, you're correct that although Pepe has some scattered sentences of dicta that refer to residency and travel as somewhat contrasting concepts, that the holding of Pepe is clear that what the government has to prove is travel. And the way that the court applies the holding in Pepe and the remand language itself underscores that merely maintaining a residence in a foreign country does not defeat the application of the statute. So right after stating the holding, which is that the government has to prove that, quote, that the illicit sexual conduct occurred while the defendant was traveling, the decision then discusses whether Pepe relocated to or resettled in Cambodia, which the court indicates is relevant to the travel element. And the court explains that it's remanding because the government disputes Pepe's claim that he had resettled in Cambodia, highlighting Pepe's letters that he had written after he was arrested expressing an intent to return to the United States. And that analysis is consistent with Pepe's adoption of what it an expansive definition of the term travels, in line with other circuits and especially the Fourth Circuit and Schmitt. So the court quotes Schmitt's statement that a person may be traveling even after a long time in one location so long as the visit is sufficiently transient or contemplates some future departure. And in noting that a stay must be temporary, Pepe approvingly cites Schmitt's treatment of a defendant's 18-month stay in a country as temporary where he didn't resettle in a foreign country during that time. Right, but throughout, I mean, I think there's a lot more than scattered dicta in Pepe to support the idea that the Pepe court seems to have thought that if you live in a place and you are in the place where you reside, you're not traveling while you're there. So you don't think that's what they thought? Well, I think, and I think counsel said the question is permanent resettlement. And I think that's correct, that what Pepe says is that travel does not have to be short or have a set end date, but it must be expected to end, that you must contemplate some future departure while you're in the foreign country. And so that's the relevant question. Well, but you can, I mean, you know, we have some familiarity with traveling around a lot. You know, when I'm, you know, I always have an upcoming trip to California planned, but it would be very strange to say that when I'm sitting in my chambers in Seattle, I'm traveling just because I contemplate at some point in the future going to California, right? I mean, so how do you reconcile your view of travel with what seems like the ordinary understanding of what it means to travel? Well, I think the fact that if you look at, for example, in Pepe, where the defendant had arrived on a one-way ticket two years before he was arrested, or the Schmidt case where, which Pepe approvingly cited, where the defendant was traveling for 18 and courts in those cases said, in Schmidt, the court said that he was still traveling because he still anticipated a return to the United States. And in Pepe, of course, the court remanding focused on the fact that Pepe had expressed an intent to return to the United States in post-arrest letter. So you can still be traveling for a long time, so long as you are contemplating an intent to return to the United States within the meaning of Pepe. And I in combination put beyond any reasonable dispute that when Abramoff was traveling, he contemplated a return to the United States and that he was traveling when he committed these charge defenses. The first is that Abramoff traveled back and forth between the United States and Russia six times in the two-year post, the two-year indictment period, never staying in Russia for even five months at a time. Now that's a similar pattern of travel to what this court reviewed in Boyajian, where the court was faced with the question of whether a Pepe instructional error. The jury in that case had not been instructed, as Mr. Abramoff's jury was not instructed, that it had to find he was still traveling when he committed the offenses. But the court found overwhelming evidence that he was, in part based on the fact that he was traveling back and forth to the United States about four times a year. In Johnson, this court also found overwhelming evidence that the defendant was still traveling within the meaning of Pepe when he was coming back to the United States about one time a year. But the second point- But you say coming back to the United- I mean, part of it was- seems to me, those are unpublished decisions, you know, that there's a home base in the United States and then lots of travel away from that home base. And the defendant's argument here is that really for the relevant period, his home base was in Russia and he had lots of travel to the United States. Well, and defendants made those arguments in Boyajian and Johnson as well. In fact, the period of time that Abramoff was outside the United States- But your job here is to say that it was overwhelmingly showing that the home base was here. Right. I'm just saying in Boyajian, the defendant also was outside the United States about 80 or 90 percent of the time. In Johnson, it was also about 80 percent of the time. And in Johnson, when the defendant was coming back to the United States and he- there's no question he had a permanent place to live abroad. Same thing as in Pepe. Same thing as in Schmidt. The fact that these defendants had foreign residences didn't mean that they weren't still traveling. When Johnson came back to the United States, he was often fundraising so that he could go back to the orphanage in Cambodia where he was living. But the court said he's still traveling because he's still coming back to the United States, never stayed outside this country for more than a year at a time. Here, Mr. Abramoff was coming back multiple times a year and never stayed outside for even five months. The second key point that I want to emphasize that I think distinguishes this case from every other 2423C case that I've seen is that Abramoff became an American citizen shortly before this pattern of travel began. So he was born and raised in not Moscow. He moved to Moscow in 1996 according to his trial testimony. But he came back to Azerbaijan in 2001 according to his trial testimony because his children were trying to get him an opportunity to immigrate to the United States from Azerbaijan. So he comes to the United States from Azerbaijan in 2001. He begins the process of becoming a naturalized citizen, which everyone knows is a very lengthy, difficult, complex process. And just before these six trips back and forth to Russia, he takes his oath to become a United States citizen. There's no more profound expression of commitment to the United States than to become a naturalized citizen. And that distinguishes this case from every other 2423C case that I've seen. Did he give up his Russian citizenship? I don't believe he was required to. So he still had Russian citizenship and he still had an apartment and a car and a business in Russia and paid taxes there. And so I guess this is essentially the same question Judge Sung was asking earlier. I mean, you need to show, I think at least for this part of your argument, to show that if the question is, would an instructional challenge have succeeded on appeal? It seems like the answer is yes, unless you can show that under Nieder the evidence was so overwhelming and uncontroverted. And it seems like there's evidence that a reasonable jury could have gone either way on where he was living. I think when you look at just the trial evidence, it is an overwhelming case that Abramoff was still traveling when he was in Russia. And I think the fact that he became a U.S. citizen at the same time that he now claims, oh, I was really permanently residing in Russia, really undercuts that claim. And usually in 2423C cases, what we have is American-born defendants who go abroad and then courts are asking, well, did they seek citizenship? Did they seek permanent status in the other country? Here, uniquely, we have the opposite, where a defendant has come to the United States and said, I want to be a citizen. At the same time, he's now claiming, oh, I was really a permanent resident of another country. And the fact that he may have had a residency in another country, I mean, a person can be a resident of two places and travel between them. That wouldn't, I think, under Pepe. But you can be a citizen of the United States and a permanent resident in another country, can you not? A citizen of the, yes, I think that's true. Okay, so why isn't that a possible argument for Ibramov to make in this case? I'm a citizen of the United States, but I'm a resident. I'm not traveling. I'm a resident of Moscow. Because I think the question under the pre-2013 amendment statute and the question that Pepe addresses is travel. It's not residency. And if you're still traveling back and forth, you're within the meaning of the statute. There's no residency or domicile element. I understand. But you can be traveling back and forth, but be a resident of another country at the time of the crime, can you not? In other words, you're not required to remain in that country for the rest of your life thereafter. Well, I think a person can be a resident of multiple places. But I think a third point that the trial evidence shows, which is very important here, is that after the travel and after the charged offenses, Ibramov, in fact, came back to the United States and resided here for three years. That, again, is a unique fact. Usually, in these cases, defendants are arrested. Can I ask you to address the other part of ineffective assistance? And I don't know whether this was a strategic decision or not. But it does seem to me that had the proper instruction been given, given the nature of these offenses and the evidence in the case, a jury was unlikely to acquit. But the argument made on direct appeal would have resulted in probably dismissal of the charges. We're all making up these reasons afterwards on the record. What are we to do with that? Well, I mean, I think the question for reasonable assistance is whether there was an objectively reasonable basis to argue one claim and not the other. Your friend says you should have done belt and suspenders, the appellate counsel. You should have argued both. Maybe you wouldn't get a home run, but you'd get a single. Even if you only have a one in ten chance in front of a jury the second time, that's better than a zero in ten chance. Why isn't that the way we should approach this? It would have been hard to do here because, of course, the motion to dismiss was argued based on the record that was developed during the motion to dismiss, which didn't include a lot of the evidence that was presented at trial. And, in fact, Ibramov contradicted at trial some of the claims that were made in his motion to dismiss proceedings. For example, he testified that he did stay at his ex-wife's apartment, which he claims that he didn't. So it would have been hard to go back and say, well, as to this claim, we're reviewing a different factual record than has been presented on the motion to dismiss. But, again, there are multiple objectively reasonable bases not to raise this claim. And since I see my time is running out, I just want to make clear that in addition to what I've said about the six travels back and forth, the fact that he just became a U.S. citizen before these travels ended, that after the travels ended, he comes back to the U.S. and lives here for three years. He also had a U.S. passport, which he got in February 2009. And the jury heard testimony that he told DHS agents that he was a proud American citizen who first came to live here in 2000. So in combination, we think that's an overwhelming case that he was still traveling. And, in fact, it's quite similar to what this court reviewed in the Boyajian case, where it did address on direct appeal whether an error, a Pepe error, was harmless. In Boyajian, the facts are strikingly where the defendant was traveling back and forth four times a year. He always returned to the U.S. after the charged abuse. Each defendant told U.S. officials that they lived in the United States. Each defendant had the U.S. passport. Each defendant spent the vast majority of his time in the foreign country. Again, in Boyajian, it was similarly 80 or 90 percent. And notably also, Boyajian also did not own or lease real property in the United States. When he was in the U.S., he stayed with his mother. This factual presentation is also very similar to what this court confronted in Johnson, when it similarly found that there was overwhelming evidence that a defendant was traveling. Counsel, can you remind me of your ER site on the statement that he moved here in 2009? That he moved here? You said he told the official that he moved here in 2009. Yes, Your Honor. That is ER 1214 to 1216, is the statements to the DHS agent that he first came to live in the U.S. in 2000. And the DHS agent was asked if he made statements about travel. And he said, yes, he traveled to Moscow. He said that he went to Moscow a few times a year from LAX. So those facts are very similar to what we've seen in Boyajian and Johnson, two cases where the court has made the same finding that it would have needed to make on direct appeal, that there was overwhelming evidence that the defendant was still traveling. And of course, here we're on a 2255 where the standard is raised. But I think the fact that in Johnson, Boyajian, other cases, courts have uniformly rejected the same arguments that Abramoff is making here on a factual record that was very similar. And in fact, didn't include some important elements like the fact that he became a U.S. citizen just before the travel and then came back to the U.S. after the travel. I think that under any standard, this court would have found that there was overwhelming evidence that he was still traveling based on the trial evidence. And for that reason, among others, counsel's assistance was not ineffective. It was certainly at least reasonable for counsel to fear that the court would hold that way. And Abramoff was not prejudiced because it likely would have. Thank you, counsel. Thank you. Rebuttal? Thank you, Your Honors. I would just really emphasize that this is where, assuming we're looking at a harmlessness beyond a reasonable doubt standard on jury instructional error, you just can't say this was harmless beyond a reasonable doubt on this record. There was certainly evidence in the record. And I would encourage the court to look at the trial record. And I actually agree with counsel that the instructional error should be evaluated in terms of what was in the trial record at the time. And that was evidence from the case agent, Coakley, as well as Filippiak, the investigator, and mostly Mr. Abramoff's testimony himself. But there was certainly plenty of evidence. Most notably, one thing I haven't said was he was in Russia 85 percent of the time. Only 15 percent of the time was he in the U.S. And was that, I know at trial he said he was, he talked about spending a lot of time there, but was that 85 percent? Was that in the trial record? 85 percent, yes. In the trial record, actually, agent Coakley's records, the flight records came in through agent Coakley, but inspector or investigator Filippiak analyzed the records and concluded that they were, it showed that he was in Russia 85 percent of the time, in the U.S. only 15 percent of the time. 15 percent of the time is not, would not be residency. It's visiting. And that's what he said he was doing. He visited the United States to see his kids. He planned his visits around their birthdays and holidays. That's consistent with his pattern of going two to three times a year. But he always returned to Russia, which was his home. That's where he lived. And I mean, certainly the jury could have found that that's where he lived and that he was not subject, therefore, to the pre-2013 statute if they had been so instructed. And I just think on that record the court cannot find that it was harmless beyond a reasonable doubt that they were not so instructed as they should have been in Pepe. I do think I'm running out of time, so unless I guess the court has any further questions. It appears not. All right. Thank you. I thank both counsel for their arguments in this case, and the case is submitted.
judges: HURWITZ, MILLER, SUNG